# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JESUS ORDONEZ QUEZADA,

        **Plaintiff,**

v.                                                    No. CIV-15-0282 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's ***Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*** (*Doc. 20*), filed January 11, 2016 (hereinafter "motion"). On April 11, 2016, Defendant filed a response (*Doc. 23*) to Plaintiff's motion and, on April 28, 2016, Plaintiff filed a reply (*Doc. 26*). In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to have the undersigned United States Magistrate Judge conduct all proceedings and enter a final judgment in this case. *See* [*Docs.* 4 and 8]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 15*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") should be **REMANDED**.

# I.   Procedural History

On October 9, 2008, Plaintiff protectively filed an application for Disability Insurance Benefits (hereinafter "DIB"), alleging that he was disabled due to "[r]ight knee injury, diabetes, and [high blood pressure]," with a disability onset date of March 10, 2008.   [*Doc. 15-8* at 6-7]. Plaintiff's application was denied at the initial level on March 24, 2009 (*Doc. 15-4* at 2-3), and at the reconsideration level on April 7, 2010 (*id*. at 4-5).   On April 26, 2010, Plaintiff requested a hearing to review the denial of his application.   [*Doc. 15-3* at 61;  *Doc. 15-5* at 15-16]. Administrative Law Judge Ann Farris (hereinafter "ALJ") conducted a hearing on May 19, 2011. [*Doc. 15-3* at 29-54].   At the hearing, Plaintiff was present, represented by attorney James Rawley, and testified by phone, with the assistance of a Spanish interpreter.   *Id.* at 31-32, 36-50. Vocational Expert (hereinafter "VE") Pamela Bowman was also present and testified.   *Id.* at 31, 51-53.

On July 7, 2011, the ALJ issued her decision (*Doc. 15-3* at 16-24; hereinafter "2011 ALJ decision"), finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled prior to December 31, 2009, the last date on which he was insured (*id*. at 24).   Plaintiff requested that the Appeals Council review the ALJ's decision.   [*Doc. 15-6* at 47-48].   On September 20, 2012, the Appeals Council denied Plaintiff's request for review on the ground that there was "no reason under our rules to review the [ALJ]'s decision."   [*Doc. 15-3*. at 2].

On November 20, 2012, Plaintiff filed a complaint seeking review of the 2011 ALJ decision with this Court, in *Quezada v. Colvin*, Case No. 12-1204 MCA-WPL.   *See* [*Doc. 15-17* at 14-15].   Based on Plaintiff's unopposed motion, this Court issued an order of remand on September 9, 2013, directing the ALJ to "reevaluate Plaintiff's residual functional capacity (RFC)

based on all the evidence," to "evaluate the medical opinion evidence in accordance with 20 C.F.R § 404.1527," particularly the opinions of treating physicians Carlos Esparza, M.D. and Alan Altman, M.D., and to "provide specific reasons for accepting or rejecting these opinions and state the weight given to such opinions."   [*Doc. 15-17* at 3-4].   On October 21, 2013, pursuant to the remand order, the Appeals Council issued an order remanding Plaintiff's case back to the ALJ for consideration of the assessments of Drs. Altman and Esparza.   *Id*. at 9-11.   In its remand order, the Appeals Council provided the additional information that, on September 20, 2013, a favorable decision (hereinafter "Disability Decision")[1] had been rendered on a supplemental security income (hereinafter "SSI") claim, which Plaintiff had filed on April, 12, 2013.   *Id*. at 9. In its remand order, the Appeals Council also affirmed the Disability Decision, which had concluded that Plaintiff's physical and mental impairments "eroded the occupational base to less than a significant number of jobs [he] could perform, and he was therefore disabled as of April 1, 2013.[2]   *Id*.

"[DIB] benefits may be paid for as many as 12 months before the month an application is filed," but cannot be paid unless the onset of disability occurs while the claimant is still covered by

---

[1] Since this Court's order remanding the 2011 Decision was issued on September 9, 2013, the Court could not have addressed the impact that the Disability Decision, which was issued eleven days later, .might have on the remand proceedings.

[2] The Court notes that Defendant states several times in her brief that the Disability Decision determined Plaintiff to be disabled as of "September 2013."   *See, e.g.,* [*Doc. 23* at 4, 5, 6].   However, the Appeals Council's remand order indicates that the Disability Decision determined that Plaintiff was disabled as of April 1, 2013, the first day of the month in which he filed his SSI claim.   [*Doc. 15-17* at 9].   Given its connection to this case, it would have been helpful to have the Disability Decision added to this record.

DIB insurance.   Soc. Sec. Rep. 83-20, 1983 WL 31249 (hereinafter "SSR 83-20"), at *1. However, Supplemental Security Income (hereinafter "SSI") payments are not limited by the claimant's insured status at the time of disability onset, and are simply "prorated for the first month for which eligibility is established after application and after a period of ineligibility."[3]   *Id*. Thus, although Plaintiff has already been found disabled and eligible for SSI payments from April 1, 2013 forward, his entitlement to DIB benefits still depends upon whether or not the onset of his disability occurred while he was still insured for DIB purposes.   Therefore, in its order remanding Plaintiff's DIB claim back to the ALJ, the Appeals Council noted that "the period prior to April 1, 2013 requires further administrative proceedings."   *Id*.

On November 5, 2014, ALJ Farris held another hearing on Plaintiff's DIB claim, at which Plaintiff was again present and testified with the assistance of a Spanish interpreter, but this time was represented by attorney Michael D. Armstrong.   [*Doc. 15-16* at 27, 29-37].   Yolanda Ramos, Plaintiff's stepdaughter, also appeared and testified (*id*. at 38-41), as did VE Pamela Bowman (*id*. at 42-44).   On December 19, 2014, the ALJ issued a second decision (hereinafter "2014 ALJ decision") in which she found, through a five-step sequential evaluation process, that Plaintiff was not disabled on or before the last date he was insured.   *Id*. at 8-19.   Pursuant to 20 C.F.R. § 404.984(a), (c), and (d), the 2014 ALJ decision became the final decision of the Commissioner on February 17, 2015, because no exceptions were filed and the Appeals Council

---

[3] Since Plaintiff filed his SSI claim in April 2013, the Disability Decision could only award disability SSI benefits from April 1, 2013.   Onset of disability dates are not ordinarily determined in SSI cases.   SSR 83-20 at *1. Therefore, the Disability Decision cannot be considered as a finding that Plaintiff's disability, which is determined identically in DIB and SSI cases, had an onset date of April 1, 2013.

did not assume jurisdiction.   On April 7, 2015, pursuant to 42 U.S.C. § 405(g), Plaintiff timely

filed a complaint in this case seeking review of the Commissioner's final decision.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether the correct legal standards were applied.

*Maes v. Astrue*,   522 F.3d 1093, 1096   (10th Cir. 2008)   (citing   *Hamilton v. Sec'y of
Health & Human Servs.*,   961 F.2d 1495, 1497–98   (10th Cir. 1992)).   If substantial evidence

supports the ALJ's findings and the correct legal standards were applied, the Commissioner's

decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*,

373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004);

*Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   A court should meticulously review the

entire record but should neither re-weigh the evidence nor substitute its judgment for that of the

Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."   *Langley*, 373 F.3d at 1118 (citation and quotation marks

omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d

at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of

evidence supporting it."   *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted);

*Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).   While a court may not

re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must

include "anything that may undercut or detract from the ALJ's findings in order to determine if the

substantiality test has been met."   *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).   "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."   *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 405.1505(a).   In light of this definition for disability, a five-step sequential evaluation process (hereinafter "SEP") has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).   At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his or her residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decisions

Plaintiff was born on May 29, 1966, and was 41 years old on March 10, 2008, the date he was injured and the alleged onset of disability date, and was 43 on the date he was last insured, December 31, 2009.   [*Doc. 15-8* at 2].   Thus, for the purposes of his disability claims, Plaintiff is considered to be a "younger person."[4]   The highest level of education that Plaintiff completed was 6th grade (*id.* at 12) and, although he understands some English, he has trouble answering questions properly in English (*Doc. 15-3* at 40).   Prior to his alleged disability, Plaintiff worked for nearly 15 years as a roofer (*Doc. 15-8* at 8), until he injured his right knee on March 10, 2008 (*Doc. 15-3* at 42).

Plaintiff's medical records include:   treatment records for the period April 17, 2008 through December 22, 2008 from Orthopedic Bone and Joint Specialists (*Doc. 15-13* at 15-44); treatment notes for the period October 6, 2009 through February 9, 2010 from Tomas R. Granados, Psy.D. (*Doc. 15-15* at 4-15); Psychiatric Review Technique Form dated March 29, 2010 by Donald Gucker, Ph.D. (*id.* at 16-29); Consulting Psychiatric Examination dated July 23, 2013 by Paula Hughson, M.D. (*Doc. 15-23* at 36-42); and Consultative Examination Report dated August 24, 2013 by Willie Nunez, M.D. (*id.* at 43-45).   Where relevant, Plaintiff's medical records are discussed in more detail below.

---

[4]  *See* 20 C.F.R. § 404.1563(c) (defining a "younger person" as "under age 50").

## A.   The 2011 ALJ Decision

In the 2011 ALJ decision, at step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity between March 10, 2008, the alleged disability onset date, and December 31, 2009, the date he was last insured.   [*Doc. 15-3* at 18]. At step two, the ALJ found that Plaintiff "had the following severe impairments:  right knee medial meniscus tear surgically repaired and removal of scar tissue; situational anxiety and depressive symptoms."   *Id*.   At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found  in  20 C.F.R.  Part 404,  Subpt. P, Appx. 1  (20 C.F.R. §§ 404.1520(d),  404.1525,  and 404.1526).  *Id*.  In so concluding, the ALJ stated that "[p]rior determinations, including the opinions of state agency physicians, concluded that the claimant's impairment(s) neither met nor equaled the severity of any listed impairment."  *Id*.  The ALJ also found that Plaintiff's "mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listing 12.04,"and that they caused only mild restriction of his activities of daily living, social functioning, and concentration, persistence or pace, and no episodes of decompensation., so that neither the paragraph B or C criteria were satisfied.  *Id*. at 19.  Before step four, the ALJ found that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except [he] must avoid the cold, can occasionally climb stairs and balance, stoop only to sit, perform no kneeling, crouching or crawling; and can perform simple and some detailed tasks, but no complex tasks."  *Id*. at 20.

### B.   The 2014 ALJ Decision

In the 2014 ALJ decision, the ALJ again found at step one that Plaintiff had not engaged in substantial gainful activity between March 10, 2008 and December 31, 2009.   [*Doc. 15-16*-at 11]. At step two, the ALJ found that Plaintiff had only one severe impairment,[5] which was a "right medial meniscal tear status post[-]subtotal meniscectomy."[6]   *Id*.   The ALJ found that Plaintiff also had impairments of hypertension, diabetes, anxiety, and depression, but that those conditions were non-severe.   *Id*.   With respect to hypertension and diabetes, the ALJ found that those conditions were "adequately controlled on medications," that Plaintiff had not "reported any symptoms of these conditions to providers," that the impairments "did not result in end organ damage" and that "[i]t was not until August 2013 that a consultative physician diagnosed peripheral neuropathy in his toes."   *Id*   With respect to anxiety and depression, the ALJ found that those conditions only caused Plaintiff "mild restriction in activities of daily living; mild difficulties in social functioning; mild difficulties with regard to concentration, persistence or pace; and no episodes of decompensation," and were, therefore, also non-severe.   *Id*. at 12.   At the third step, the ALJ found that Plaintiff did not have an impairment or combination of

---

[5] Significantly, in the 2011 ALJ decision, the ALJ found that Plaintiff's "situational anxiety and depressive symptoms" were also severe impairments.   [*Doc. 15-3*-at 18].   In the 2014 ALJ decision, however, the same ALJ found that "[b]ecause [Plaintiff]'s medically determinable mental impairments caused no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, they were non[-]severe."   [*Doc. 15-16* at 12].

[6] A meniscal tear is an injury to the meniscus, which is a c-shaped piece of cartilage in the knee that acts as a cushion between the ends of the bones forming the joint.   A subtotal meniscectomy is the surgical removal of the torn part of the meniscus.   http://orthoinfo.aaos.org/topic.cfm?topic=a00358 (site last visited July 27, 2016).

impairments that met or medically equaled any of the Listings found in 20 C.F.R. Part 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). *Id.* at 12. In reaching this conclusion, the ALJ found that "[n]o treating or examining physician has indicated findings that would satisfy the severity requirements of any listed impairment," and stated that she had relied in part upon the opinions of the State agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." *Id*. at 13.

Before step four, the ALJ determined that Plaintiff had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) except that he could occasionally climb stairs hut never ladders or scaffolds; occasionally balance and stoop; never kneel, crouch, or crawl; and needed to use a cane for walking long distances or on uneven ground." [7] *Id*. In support of this RFC assessment, the ALJ found that Plaintiff's "medically determinable impairments might be expected to cause some of the alleged symptoms; however, [Plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." *Id*. at 14.

At step four, the ALJ found that Plaintiff "was unable to perform any past relevant work." *Id*. at 17. At step five, the ALJ found jobs that existed in significant numbers in the national economy, through December 31, 2009 the date he was last insured, that Plaintiff could have

---

[7] This RFC includes unexplained changes from the RFC found to exist in the 2011 Decision. Since the ALJ was considering the same evidence and the same time period (*i.e.,* up to and including December 31, 2009), this inconsistency should have been explained by the ALJ.

performed.  *Id*. at 18.   The ALJ based this conclusion on the VE's testimony that "an individual with Plaintiff's age, education, work experience, and [RFC]" would have been able to perform the requirements of the representative occupation of jewelry sorter (DOT 700.687-062),[8] which is considered a sedentary, unskilled job.  *Id*.   The ALJ then "determined that the [VE]'s testimony is consistent with the information contained in the [DOT]."  *Id*. at 19.   Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 10, 2008 through December 31, 2009.  *Id*.

## V.   Analysis

Plaintiff argues in his motion to reverse or remand that the ALJ failed to comply with the dictates of SSR 83-20, and that her only duty on remand was to determine whether or not Plaintiff's already-determined-to-be-disabling impairments were disabling prior to December 31, 2009.  [*Doc. 20* at 15-21].   In the alternative, Plaintiff argues that (1) the ALJ improperly failed to include Dr. Esparza's reaching limitation in her 2014 decision (*id*. at 21-22); and (2) the ALJ failed to meet her burden at step five to ensure that Plaintiff could perform a job with a reasoning level of 2 (*id*. at 22-24).   In response, Defendant asserts that (1) the ALJ's 2014 finding that Plaintiff was not disabled during his insured status period is supported by substantial evidence (*Doc. 23* at 4-7); (2) the ALJ properly evaluated Dr. Esparza's opinion (*id*. at 7-8); and (3) the

---

[8] "DOT" stands for Dictionary of Occupational Titles.

VE's testimony does not conflict with the DOT (*id*. at 8-9).   In his reply, Plaintiff contends that Defendant has mischaracterized both his argument and SSR 83-20.   [*Doc. 26*].

## A.    Applicability of SSR 83-20

Plaintiff contends that the 2014 ALJ decision fails to apply and follow the dictates of SSR 83-20.   Plaintiff asserts that SSR 83-20 controls the post-remand proceedings because, in the interim, Plaintiff was determined to be disabled for Social Security Insurance (hereinafter "SSI") as of April 1, 2013.[9]   Plaintiff asserts that, under SSR 83-20, the issue before the ALJ in the 2014 proceedings should have been limited to determining the date on which his mental and physical impairments caused him to become disabled.   The onset date of disability is significant to Plaintiff's DIB claim because such claims can only result in payment of benefits if the disability arose on or before the claimant's date last insured (hereinafter "DLI").   Here, Plaintiff's DLI was December 31, 2009.   Therefore, the only issue that Plaintiff asserts should have been decided in the 2014 ALJ decision was whether or not Plaintiff's already-determined disability had an onset

---

[9] According to the Appeals Council, the Disability Decision "found that [Plaintiff]'s severe physical and mental impairments resulted in a [RFC] that eroded the occupational base to less than a significant number of jobs [Plaintiff] could perform."   [*Doc. 15-17* at 9].   That finding was based, at least in part, on July and August 2013 consultative examinations by Paula Hughson, M.D. and Willie L. Nunez, M.D., respectively, to the effect that Plaintiff "would not be able to perform physical labor due to his chronic and distracting right knee pain and limitation of function (Sitting, standing, kneeling);" and was unlikely to be employed due to "[h]is limitations in attention, concentration, memory, and coping skills" (*Doc. 15-23* at 40); and that Plaintiff has "decreased range of motion in his right knee;" as well as "difficulty with bending, crouching, and squatting due to his right knee limitations;" has "peripheral neuropathy in his toes bilaterally;" and "could walk and stand as tolerated; [but] may need an assistive device for long walks, greater than one mile" (*Id*. at 45).   Finding that the Disability Decision was "supported by the substantial medical evidence of record," the Appeals Council affirmed.   [*Doc. 15-17* at 9].

date before 2010.  The date of onset of disability is defined as "the first day an individual is disabled as defined in the Act and the regulations."   SSR 83-20 at 1.

Plaintiff also contends that the ALJ was required by SSR 83-20 to consult with a medical advisor regarding the onset date of Plaintiff's disability, because the medical evidence regarding onset is ambiguous.  SSR 83-20 establishes guidelines for determining the onset of disability dates in DIB and SSI[10] cases, and differentiates between injuries with a "traumatic" origin, and those that are non-traumatic, or "slowly progressive."  *Id*. at *2.  The ruling explains that the onset date of disability in a traumatic injury case is typically the date of injury, whereas "[i]n disabilities of non[-]traumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity."  *Id*.  In slowly progressive impairments, "medical evidence serves as the primary element in the onset determination," and "[r]eports from all medical sources . . . which bear upon the onset date should be obtained to assist in determining when the impairment(s) became disabling."  *Id*.  The ruling recognizes, however, that there may not always be sufficient medical evidence to establish an onset date and, therefore, "it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process."  *Id*.  Significantly, in cases that require that onset be inferred, the ALJ "should call on the services of a medical advisor," and, if it appears from the case file "that additional

---

[10] SSR 83-20 acknowledges that determination of a specific date of onset is not typically necessary in a Title XVI (SSI) case.   *Id*. at *7.

medical evidence concerning onset is available, such evidence should be secured before inferences are made." *Id*. at *3.   Moreover, where reasonable inferences "cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources."   *Id*.

Defendant argues that SSR 83-20 is inapplicable to the remand proceedings because the Administration's 2013 Disability Decision was "not relevant" to the ALJ's consideration of Plaintiff's disability prior to 2010.[11]   [*Doc. 23* at 4].   In support of this position, Defendant contends that SSR 83-20 "does not relate to situations in which an individual was found disabled on a subsequent claim during a different period of time"[12] (*Doc. 23* at 5), citing *Gutierrez v. Astrue*, 253 F.App'x 725 (10th Cir. 2007) (unpublished).   In *Gutierrez*, however, the Tenth Circuit stated that "the need to determine an onset date is relevant only where a claimant has been found disabled."   *Id*. at 729.   Since the claimant in *Gutierrez* had not been found to be disabled, the court held that SSR 83-20 did not require the ALJ to determine an onset date and, accordingly, did not require the ALJ to consult a medical expert.   *Id*.   Essentially, the Defendant's position is

---

[11] Defendant also claims Plaintiff's position to be that "the ALJ was required to find that his disability began at some point prior to his 2009 date last insured."   [*Doc. 23* at 4].   However, this mischaracterizes Plaintiff's argument, which is actually that, once he was found to be disabled as of April 1, 2013, the only issue the ALJ should have considered in the 2014 proceedings was whether the onset of that disability occurred before or after his DLI. *See* [*Doc. 26* at 4-5].

[12] Although Plaintiff asserts that Defendant also argued that SSR 83-20 is inapplicable to cases in which the disability finding was rendered by a different decision maker (*Doc. 26* at 2-4), and that the Appeals Council's failure to instruct the ALJ to determine the onset date of Plaintiff's disability relieved the ALJ of any obligation to do so (*id*. at 1-2), the Court concludes that Defendant did not clearly or effectively make either argument and, therefore, those arguments are not addressed in this decision.

that a DIB ruling that a claimant was not disabled as of his or her DLI essentially eliminates the need to determine a date of disability onset based on a subsequent SSI disability determination. However, this argument has been rejected by both this Court and the Tenth Circuit.

For example, in *Blea v. Barnhart*, 466 F.3d 903 (10th Cir. 2006), the claimant applied for both DIB and SSI benefits in March 2002, claiming a disability onset date of June 1997. Mr. Blea's claims were both denied at the initial level of administrative review. However, in October 2002, at the reconsideration level, he was found to be disabled due to both post-traumatic arthritis and dysthymia[13] for purposes of SSI, and entitled to benefits as of March 1, 2002 (the first day of the month in which his claim was filed). Mr. Blea was denied DIB benefits based on the determination that his impairments had not been disabling on any date through his DLI, which was December 31, 1998. He requested an ALJ hearing, which was held in September 2003, but his request that the ALJ call a medical expert to assist with review of the medical evidence was rejected by the ALJ on the ground that there was no medical or psychiatric evidence relating to the time prior to Mr. Blea's DLI that warranted his request. Therefore, the ALJ applied the five-part SEP analysis and denied DIB benefits based on a finding that Mr. Blea retained the RFC to perform sedentary work as of the date of his DLI and, therefore, had not been disabled while still

---

[13] Dysthymia, also known as "dysthymic disorder" or "chronic depression," is a chronic (*i.e.*, lasting at least two years) depressive disorder involving milder mood changes than depression, and symptoms that may change daily but do not have as much effect on everyday life as does depression itself. "Although the symptoms [of dysthymia] are not as severe as typical depression, dysthymia can be just as distressing because it lasts so long." http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024769/ (site last visited July 27, 2016).

insured.   The ALJ did not determine an onset date of disability, the Appeals Council declined

review, and the district court affirmed.

In Mr. Blea's appeal to the Tenth Circuit, he argued that the ALJ should have applied

SSR 83-20 to determine the onset date of his disability.   Under SSR 83–20, an ALJ must call on

the services of a medical advisor at the hearing if the medical evidence of onset is ambiguous.

*Reid v. Chater*, 71 F.3d 372, 374 (10th Cir. 1995).   Since SSR 83-20 specifies that the onset date

of a traumatically-caused impairment is the date of the injury (SSR 83-20 at *2), in such cases, the

onset date of disability is not ambiguous, and a medical advisor need not be consulted.   *Blea*, 466

F.3d at 910.   However, Mr. Blea had been found disabled based on post-traumatic impairments

that arose after his initial injury, a gunshot wound, rather than from the gunshot wound itself.   As

such, the court concluded that his disabling impairments were slowly progressing, rather than

traumatic, noting that determining the onset date of slowly progressive impairments is

"particularly difficult," especially when the alleged onset date is far in the past and adequate

medical records are not available.   *Id*. at 910-11.   In such circumstances, the medical evidence

may be ambiguous with respect to date of onset and, if so, "SSR 83-20 requires the ALJ to call

upon the services of a medical advisor to insure that the determination of onset is based upon a

legitimate medical basis."   *Id*. (internal quotation marks omitted) (quoting *Grebenick v. Chater*,

121 F.3d 1193, 1201 (8th Cir. 1997)).

Here, Plaintiff suffered a traumatic injury on March 10, 2008, his alleged disability onset

date, when his right knee was severely injured.   However, Plaintiff's disabling impairments of

post-traumatic arthritis and dysthymia, though related to his traumatic knee injury, progressed

more slowly to disabling status and, therefore, present a more difficult determination of onset.   In

*Blea*, the court held that an ALJ is not at liberty to disregard "the clear directives of SSR 83-20, which is binding on all components of the Social Security Administration" pursuant to 20 C.F.R. § 402.35(b)(1).   *Id.* (internal quotation marks omitted).   Therefore, "[i]t is important to understand that the issue of whether a medical advisor is required under SSR 83-20 does not turn on whether the ALJ could reasonably have determined that [Plaintiff] was not disabled."   *Id.* (quoting *Grebenick*, 121 F.3d at 1200-01).   Rather, "our precedent clearly establishes that where 'medical evidence of onset is ambiguous,' an ALJ is obligated to call upon the services of a medical advisor."   *Id.* (quoting *Reid*, 71 F.3d at 374).

Plaintiff contends that the medical evidence regarding the onset of his disabling impairments, particularly his mental impairments, is ambiguous because not only is it difficult to identify a precise date those impairments became disabling, but the medical evidence regarding progression of his impairments is minimal between 2008 and 2013.   [*Doc. 20* at 17].   Plaintiff did not begin seeing a psychologist, Tomas Granados, Psy.D., until October 2009, less than three months prior to his DLI.   [*Doc. 15-15* at 11-15].   In his initial evaluation, Dr. Granados opined that, although Plaintiff's objective tests results were not interpreted due to invalidity markers, the "objective results mostly suggest a high level of generalized psychological distress," and that Plaintiff apparently had "very limited coping skills and resources."   *Id*. at 14-15.   Dr. Granados also suggested at that time that Plaintiff might benefit from an anti-anxiety medication trial.   *Id*. at 15.   On November 20, 2009, Dr. Granados discussed strategies for managing Plaintiff's depression and anxiety, but noted Plaintiff's "cumulative progress toward achievement of the treatment goals" to be "Below Average."   *Id*. at 10.   On December 7, 2009, Dr. Granados noted that "it appears that [Plaintiff] is having a difficult time understanding the concepts that I am trying

to impart to him," and also that "[i]t is notable that he exhibits marked pain behavior during the session as well as walking to the provider's office." *Id*. at 9.   On December 21, 2009, ten days prior to Plaintiff's DLI, Plaintiff reported "not remembering any aspect of our previous visit nor of the reading that he was provided at the last visit," and Dr. Granados noted that it was "not clear if his recall is as significantly impaired as he portrays or if this is a motivation issue." *Id*. at 8.   In January 2010, Plaintiff again indicated having no recollection of content from his previous session, and Dr. Granados encouraged him to take notes and assisted him with organizing the information. *Id*. at 6.   At his next appointment, on February 1, 2009, Plaintiff's mood and affect appeared to be slightly improved, and he brought in a schedule he had been asked to complete, which indicated to Dr. Granados that Plaintiff was "clearly making an effort to increase his activity level and his socialization." and was "clearly making an effort in these sessions." *Id*. at 5.   Still, Dr. Granados continued to rate Plaintiff's progress toward treatment goals as below average. *Id*.   On February 9, 2009, Dr. Granados noted that Plaintiff's "mood and affect continue to improve," and that "he was able to provide some examples of behavioral and cognitive changes which he could make in order to begin to work his way out of the *paralyzing anxiety and depressive cognitive set that he has been in*." *Id*. at 4 (emphasis added).

Dr. Granados' records do not definitively indicate whether or not Plaintiff's mental impairments were disabling prior to his DLI, and there are no other psychological records for the time period between Plaintiff's 2008 injury and his DLI.   In her 2011 ALJ Decision, the ALJ found Plaintiff's depression and anxiety to be severe, though not disabling, impairments up to his DLI [*Doc. 15-3* at 18-19].   Yet, in the 2014 ALJ Decision, the ALJ inconsistently found the same impairments to be non-severe during the same time period.   [*Doc. 15-16* at 11].   This finding was

despite the ALJ's access to a July 2013 report by Disability Determination Services consultative examiner Paula Hughson, M.D., in which she assessed Plaintiff with seven "marked" limitations in his abilities to perform work-related mental tasks, and "moderate to marked" in one other. [*Doc. 15-23* at 41].   Dr. Hughson noted that Plaintiff had "been depressed since a knee injury in 2008 and two unsuccessful surgeries," that he also "may be functioning only in the borderline intellectual range," and that "[h]is coping skills are quite limited."   *Id*. at 40.   In her prognosis, Dr. Hughson stated:

> This gentleman presents with multiple and complex medical, social, and mental health treatment needs.   [He] would not be able to perform physical labor due to the chronic and distracting right knee pain and limitation of function (Sitting, standing, kneeling).   His limitations in attention, concentration, memory, and coping skills would also make it unlikely that he could be employed in any other capacity.   In fact, he clearly would not be able to manage his medical conditions, or his affairs, without external support (presently provided by his wife and her grown children).

*Id*.   This assessment was considered in the SSI proceedings in which Plaintiff was found to be disabled in 2013, but it also does not clearly indicate at what point Plaintiff's mental impairments became disabling.

The question before this Court is whether the medical evidence regarding Plaintiff's impairments, and the time at which they became disabling, is ambiguous.   There is very little medical evidence with respect to Plaintiff's mental impairments prior to his LDI, although Dr. Granados did work with Plaintiff shortly before and shortly after that time.   However, Dr  Granados did not render an opinion regarding any limitations Plaintiff may have had due to his mental impairments, and considered the "objective evidence" of them to be invalid.   On the other hand, Dr. Granados' notes (*see, e.g., Doc. 15-15* at 5-8) are suggestive that Plaintiff may well have been suffering from the same kinds of attention, concentration, memory, and coping skills in 2009

that were later found by Dr. Hughson to be disabling.   The paucity of medical evidence, coupled with the lack of any definitive statements of when Plaintiff's impairments became significant enough to be disabling, along with the ALJ's failure to follow the procedures dictated by *Blea*, lead this Court to conclude that the evidence regarding the onset date of Plaintiff's impairments is ambiguous and, therefore, that the ALJ erred by not consulting a medical advisor.   Because this Court finds that additional fact-finding is required with respect to Plaintiff's disability onset date, this case will be remanded to the Commissioner for a determination of onset date, using the services of a medical advisor, consistent with this opinion.   On remand, the ALJ should not have attempted to determine whether Plaintiff was disabled prior to his DLI without first consulting a medical advisor.   Plaintiff has already been found to be disabled, so the *only* question that should be considered on remand is *when that disability began.   See, e.g., Willingham v. Astrue*, 11-508 LAM, *Doc. 19* (D. N.M. August 22, 2012) at 11 (unpublished).

## B.   Alternative Arguments

Because the Court has determined that the 2014 ALJ decision must be remanded for consideration of the sole issue of the date of onset of Plaintiff's disability, Plaintiff's alternative arguments regarding errors in the 2014 ALJ decision are moot, and will not be addressed in this decision.

# VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded for a determination, in accordance with SSR 83-20, of the onset date of Plaintiff's disability.

**IT IS THEREFORE ORDERED** that Plaintiff's ***Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*** (*Doc. 20*) is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.   A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**